IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SAMUEL T. RUSSELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:22-cv-1648-B-BN |
| | § | |
| KEN PAXTON and MEGAN LAVOIE | § | |
| WEAVER, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Citing 42 U.S.C. §§ 1981 and 1983, Plaintiff Samuel T. Russell filed, on July 29, 2022, a *pro se* lawsuit against two Texas officials, Attorney General Ken Paxton and Megan LaVoie Weaver, Administrative Director of the Texas Office of Court Administration, paying the $402 filing fee to do so. *See* Dkt. No. 3.

And United States District Judge Jane J. Boyle referred Russell's lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b). *See* Dkt. No. 4.

By paying the filing fee, Russell assumed the responsibility to properly serve each defendant with a summons and a complaint in compliance with Federal Rule of Civil Procedure 4 by the 90th day after the filing of this action that was not a Saturday, Sunday, or legal holiday (which was October 27, 2022). *See* FED. R. CIV. P. 4(m).

Although Russell filed summons returns on November 4, 2022, *see* Dkt. Nos. 6, 7, he moved for a "75-day continuance" on November 15, 2022, to allow Defendants

more time to respond to his complaint before he moves for default judgment, *see* Dkt. No. 8.

The Court denied Russell's motion on November 28, 2022: "The Court understands this motion as not requesting more time to properly serve Defendants under Rule 4(m) but as requesting, on behalf of Defendants, more time for them to respond to a complaint that Russell states has been properly served under Rule 4. Under this interpretation – and without determining whether Defendants have been properly served under Rule 4 – the Court DENIES the motion for continuance." Dkt. No. 9 (citation omitted).

Russell now moves for default judgment. *See* Dkt. No. 11.

And the undersigned enters these findings of fact, conclusions of law, and recommendation that the Court deny the motion for default judgment and dismiss this lawsuit for lack of jurisdiction. These findings and conclusions provide Russell notice as to the jurisdictional deficiencies identified by the undersigned. And the ability to file objections to the undersigned's recommendation that this case be dismissed for lack of jurisdiction (further explained below) offers Russell an opportunity to establish (if possible) that the Court does indeed have jurisdiction over his claims.

## Discussion

When a defendant has "failed to plead or otherwise defend" an action, the Court may enter a default judgment if the plaintiff establishes the following prerequisites: (1) the defendant was served with the summons and complaint and default was

entered; (2) the defendant is not "a minor or incompetent person"; and (3) the defendant is not in the military. FED R. CIV. P. 55(b)(2); *see also N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (defining "the terms regarding defaults").

Here, Russell has not requested entry of default, so the Clerk of Court has not entered default. His motion for default judgment should therefore be denied for this reason alone.

But "a 'party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default.' In fact, '[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.'" *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam) (citations omitted); *see, e.g.*, *Escalante v. Lidge*, 34 F.4th 486, 493 (5th Cir. 2022) ("[E]ven if a defendant defaults, a court may still deny default judgment if the plaintiff has failed to state a claim on which relief can be granted." (citing *Lewis*, 236 F.3d at 767-68)).

And, before it may enter default judgment, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (quoting *Williams v. Life Savings & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999) (federal courts have independent duty to examine their own subject matter jurisdiction).

Here, Russell's complaint appears to be a collateral attack on a decision by Texas authorities to place his daughter in foster care. *See* Dkt. No. 3 at 7-8 (under

the section of the complaint titled "Statement of Facts," alleging, among other things, that "Plaintiff's daughter was seized from her school"; "The pocket court ruled to seize Plaintiff's daughter from school and place her in foster care"; "When Plaintiff arrived for the Hearing, the decision was made to keep Plaintiff's daughter in foster care until Plaintiff submitted to a series of tests and classes"; "Plaintiff successful completion of all pocket court requirements (including all tests and classes) proving the Pocket Court erred in previous decision"; "The Pocket Court concurred with its Texas AGs' official by returning Plaintiff's daughter to his house and rendering an 'Order of Nonsuit' on January 27, 2020"; "Plaintiff's child was abducted even though there was no legal basis supporting this illegitimate seizure upheld by the Texas CC and initiated by the Texas AG's office"; "Plaintiff did not know whether or not his child had been kidnapped, as no papers were presented to him by neither the Pocket Texas CCs, Texas AGs, nor the Texas facility (school) his daughter was abducted from").

And, although Russell has sued Attorney General Paxton and Ms. Weaver, he fails to allege their personal involvement in the facts underlying this lawsuit. *See id.* Russell has therefore sued the defendants in their official capacities as state officials. *See Robinson v. Hunt Cnty., Tex.*, 921 F.3d 440, 446 (5th Cir. 2019) ("To determine whether a defendant is being sued in his or her official or individual capacity, [a court should] examine '[t]he allegations in the complaint'" "and '[t]he course of proceedings.'" (quoting *Parker v. Graves*, 479 F.2d 335, 336 (5th Cir. 1973) (per curiam), then *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985))).

So Russell's lawsuit "is 'no different from a suit against' the State of Texas."

*Morris v. Livingston*, 739 F.3d 740, 745-46 (5th Cir. 2014) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

And, because Russell has not shown that an applicable exception applies to his claims, made under Sections 1983 and 1981, such as waiver or the exception allowed by *Ex parte Young*, 209 U.S. 123 (1908), the Court lacks subject matter jurisdiction over his claims. *See Stramaski v. Lawley*, 44 F.4th 318, 321-22 (5th Cir. 2022) ("Absent waiver, the immunity of a state from suit as signified by, but not fully expressed in, the Eleventh Amendment is a jurisdictional barrier." (citing *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 374, 276 (5th Cir. 2020))); *see also NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015) ("'Federal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it.' Texas has not consented by statute, and § 1983," for example, "does not abrogate state sovereign immunity." (quoting *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014), then citing *Quern v. Jordan*, 440 U.S. 332, 340 (1979))); *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. Unit A June 1981) ("[42 U.S.C.] § 1981 contains no congressional waiver of the state's eleventh amendment immunity.").

### Recommendation

The court should deny Plaintiff Samuel T. Russell's motion for default judgment [Dkt. No. 11] and dismiss this lawsuit for lack of jurisdiction.

A copy of these findings, conclusions, and recommendation shall be served on

all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 5, 2022

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE